238 So.2d 98 (1970)
W.E. JOHNSON EQUIPMENT CO., Inc., Petitioner,
v.
UNITED AIRLINES, INC., Respondent.
No. 39173.
Supreme Court of Florida.
July 13, 1970.
Jon D. White, of Walsh & Dolan, Fort Lauderdale, for petitioner.
John H. Wahl, Jr., of Walton, Lantaff, Schroeder, Carson & Wahl, Miami, for respondent.
*99 DREW, Justice.
We review a decision of the District Court of Appeal, Fourth District,[1] that a bailee for hire may maintain an action against a bailor for hire for breach of an implied warranty of suitability for a leased chattel's known and intended use. The holding below conflicts with a statement of law in the case of Brookshire v. Florida Bendix Co.[2] that a bailor's obligation is limited to the duty to exercise due care to furnish an article in a reasonably safe condition. We must decide whether the responsibility of the lessor is limited as stated by the court in Brookshire, or whether the lessor's responsibility includes an implied warranty that the chattel leased is fit for a particular purpose if such purpose is known to the lessor. The facts are adequately set forth in the district court opinion and will not be restated here. We have jurisdiction under Article V, Section 4 of the Florida Constitution, F.S.A.
Today the leasing business flourishes. More and more the individual or business leases one or more articles that in former years would have been purchased. The same business goals often can be reached by lease as well as by purchase. Determining the extent of the lessee's recourse against the lessor will undoubtedly become an increasingly frequent task for the courts.
The early case of Williamson v. Phillipoff[3] was a precursor of things to come. This Court held that a bailed chattel must be of a character and in a condition to be used as contemplated by the contract, and that the bailor is liable for damages occasioned by faults or defects in the chattel. The decision rested more upon contract than implied warranty principles as we know them today. Since Williamson we have disposed of cases closely allied with this cause,[4] but until today have not decided the precise issue here.
We have long recognized and applied the warranty of fitness for a particular purpose in sales cases.[5] This implied warranty in the sale of goods has become part of Florida statutory law by adoption of the Uniform Commercial Code.[6] As pointed out in the official comments to the Florida codification of the fitness warranty, a "particular purpose" differs from the ordinary purpose for which goods are used, in that a specific use peculiar to the nature of the purchaser's business or activity is contemplated, whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and are aimed at uses which are customarily made of the goods in question. In commenting upon a preceding section of the Code dealing with warranties, the official commentators suggest that warranties need not be confined to *100 sales contracts, noting that they may arise in other appropriate circumstances such as in the case of bailments for hire. The warranty sections of the Code are not designed to disturb in any way such lines of case law extension of warranties that are confined in the Code to sales.[7]
Among the courts that have recently considered the question, the weight of authority is with implying a warranty of fitness under appropriate circumstances.[8] Application of the implied warranty of fitness to the lease or bailment for hire situation has received favorable support and comment in many legal periodicals.[9] William Prosser in the latest edition of his treatise recognizes that the bailor of a chattel for hire is often found to have impliedly warranted its fitness for the bailee's particular use.[10] Prosser finds no good reason to withhold extension of the fitness warranty to the lease situation, subject to all limitations now found in sales cases. We agree.
The reasons for imposing the warranty of fitness in sales cases are often present in lease transactions. Public policy demands that in this day of expanding rental and leasing enterprises the consumer who leases be given protection equivalent to the consumer who purchases. Although a sale transfers ownership and a lease or bailment merely transfers possession and anticipates future return of the chattel to the owner, there may be as much or more reliance on the competence or expertise of the lessor than on the competence of the seller. The prospective lessee with an immediate need is more apt to spend less time "shopping around" for the most suitable chattel if he contemplates possession for a relatively short time rather than permanent ownership. Just as in the sale of goods, the lessee may have little opportunity or ability to detect a design or other characteristic inherent in the leased chattel that might render it unsuitable for a particular intended use. The lessor as well as the seller is able to sustain or distribute as a cost of doing business the expense of protecting himself against damages sustained by breach of this warranty.
The warranty of fitness does not arise in all lease transactions, but it should be recognized under appropriate circumstances. Just as in sales cases, whether the warranty should be applied may depend upon whether the lessor possessed or should have possessed expertise in the characteristics of the leased chattel, whether the lessee's reliance upon the lessor's selection of a suitable chattel was commercially reasonable, and whether the lessor was a mass dealer in the chattel leased or whether the transaction was an isolated occurrence.
Whether the warranty of fitness applies to a particular transaction depends upon an evaluation of the total commercial setting of the transaction, including but not limited to consideration of the factors mentioned herein.
The general rule can be stated as follows: In the absence of an agreement to the contrary, where the lessor has reason to know any particular purpose for which the leased chattel is required and that the lessee is relying upon the lessor's skill or judgment to select or furnish a suitable chattel, there is an implied warranty that the chattel shall be fit for such purpose.
*101 We agree with the district court below that on the evidence in this case the implied fitness warranty issue should have been submitted to the jury. The decision of the District Court of Appeal, Fourth District, is hereby affirmed and the writ discharged.
It is so ordered.
ERVIN, C.J., and ROBERTS, ADKINS and BOYD, JJ., concur.
NOTES
[1] United Airlines, Inc. v. W.E. Johnson Equipment Co., 227 So.2d 528 (4th Dist.Ct.App.Fla. 1969).
[2] 153 So.2d 55 (3d Dist.Ct.App.Fla. 1963), cert. denied, 163 So.2d 881 (Fla. 1964). The broad language in Brookshire from which conflict stems excludes from lease transactions a warranty of fitness for a particular purpose, although the circumstances related more to a warranty comparable to the sales warranty of merchantability wherein the chattel must be fit for its ordinary intended purpose.
[3] 66 Fla. 549, 64 So. 269, 52 L.R.A.,N.S., 412 (1914).
[4] See, i.e., Toombs v. Ft. Pierce Gas Co., 208 So.2d 615 (Fla. 1968) (sale of bottled gas in leased container that exploded brought into play dangerous instrumentality exception to privity requirement).
[5] Berger v. E. Berger & Co., 76 Fla. 503, 80 So. 296 (1918), and Smith v. Burdine's Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115 (1940).
[6] Fla. Stat. § 672.2-315 (1967), F.S.A.; "Implied warranty: fitness for particular purpose.  Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."
[7] Official comment no. 2 to Fla. Stat. § 672.2-313 (1967), 19A F.S.A. 212.
[8] See cases listed in Annot., 68 A.L.R.2d 850, 854 (1959). This annotation also contains citations to cases treating the various exceptions and limitations applicable to the warranty of suitability for a known intended use in the lease situation.
[9] See, i.e., E.A. Farnsworth, Implied Warranties of Quality in Non-sales Cases, 57 Colum.L.Rev. 653 (1957); 1969 U.Ill. L.F. 115; 10 B.C.Ind. & Com.L.Rev. 127 (1968). See also W. Davies, Implied Conditions as to Fitness in a Contract of Hire: An Anglo-Australian Conflict, 38 Australian L.J. 277 (1964).
[10] W. Prosser, Torts, § 95 at 655 (3d ed. 1964).